Hart, J.
 

 There are two procedural questions raised by the record in this case: (1) Did the Common Pleas Court err in overruling plaintiffs’ motion to strike defendants’ motion for new trial from the files on the ground that the motion was not seasonably made, and, (2) did the Court of Appeals err in sustaining defendants ’ motion to dismiss the appeal, on the ground that vacating the verdict of the jury by the Common Pleas Court on motion for new trial is not a judgment or final order from which an appeal may be taken? These questions will be discussed in the order named.
 

 Section 11578, G-eneral Code, provides as follows:
 

 * ‘ The application for a new trial must be made at the term the verdict, report, or decision is rendered * * *. The application must be made within three days after the verdict or decision is rendered, unless he [the party applying]- is unavoidably prevented from filing it within such time.”
 

 The verdict of the jury in this case was rendered in favor of plaintiffs on Saturday, January 8, and the motion for new trial was made on Monday, January 10. The plaintiffs claim that while the motion was filed within the three-day limitation, it was not filed until the afternoon of January 10 and, therefore, after the expiration of the October, 1937, term, which expired at nine o’clock on that day. There is testimony to that effect, in support of the motion to strike, attached as an appendix to the brief of the plaintiffs, but this1 is not certified as a part of the record and, therefore, must be disregarded.
 

 The transcript of the record shows an entry without date-, but between the notation of the filing of the ver
 
 *173
 
 diet on January 8 and the notation of the filing of a motion for new trial on January 10, in the following words: “October term A. D. 1937 continued.” Furthermore, since it was within the power of the Common Pleas Court, under Section 1536, General Code, to extend the October, 1937, term in accordance with the record notation on the docket, and since the record is silent as to when the term actually closed, this court cannot assume that the motion for new trial was' not filed within the term. This conclusion is supported by the fact that the Common Pleas Court, on February 9, following, considered the motion to strike, overruling the same, and at the same time granted the motion for new trial, which in effect amounted to an extension of the term. The extension of the term was a matter within the authority and discretion of the court, and in the absence of any other record it will be presumed that the court acted within its' jurisdiction and authority in overruling the motion to strike and sustaining the motion for a new trial. Every presumption will be indulged to afford a party the benefit of the remedial and procedural statutory provisions clearly and obviously intended.
 

 Under the circumstances of this case, this court is of opinion that the Common Pleas Court did not err in overruling plaintiffs’ motion to strike defendants’ motion for new trial from the files, and in considering and ruling upon defendants’ motion for new trial.
 

 The second question raised in this case relates to the jurisdiction of the Court of Appeals to review the record on appeal from the Common Pleas Court, based upon the action of the latter court in granting a motion for new trial.
 

 • It must be remembered that the Court of Appeals acquires its' jurisdiction directly and solely from Section 6, Article IY of the. Constitution
 
 (Bayes
 
 v.
 
 Midland Casualty Co., 92
 
 Ohio St., 303, 110 N. E., 751;
 
 Cincinnati Polyclinic
 
 v.
 
 Balch,
 
 92 Ohio St., 415, 111
 
 *174
 
 N. E., 159), and that there is no legislative authority to enlarge that jurisdiction.
 
 Thompson
 
 v.
 
 Bedington,
 
 92 Ohio St., 101, 110 N. E., 652, Ann. Cas. 1918A, 1161;
 
 Cincinnati Polyclinic
 
 v.
 
 Balch, supra; Wagner
 
 v.
 
 Armstrong,
 
 93 Ohio St., 443, 113 N. E., 397;
 
 Haas
 
 v.
 
 Mutual Life Ins. Co. of New York,
 
 95 Ohio St., 137, 115 N. E., 1020;
 
 Marleau
 
 v.
 
 Marleau,
 
 95 Ohio St., 162, 115 N. E., 1009;
 
 Robinson
 
 v.
 
 Wagner, Gdn.,
 
 95 Ohio St., 300, 116 N. E., 514;
 
 Thompson
 
 v.
 
 Denton,
 
 95 Ohio St., 333, 116 N. E., 452;
 
 State, ex rel. Machinery & Supply Co.,
 
 v.
 
 Jones,
 
 96 Ohio St., 506, 118 N. E., 115;
 
 Hollowell, Exrx.,
 
 v.
 
 Schraden,
 
 96 Ohio St., 599, 118 N. E., 1083;
 
 State, ex rel. D’Alton,
 
 v.
 
 Ritchie,
 
 97 Ohio St., 41, 119 N. E., 124;
 
 United Distillers Co.
 
 v.
 
 Zeisler,
 
 97 Ohio St., 62, 119 N. E., 139;
 
 Complete Building Show Co.
 
 v.
 
 Albertson,
 
 99 Ohio St., 11, 121 N. E., 817;
 
 West
 
 v.
 
 West,
 
 100 Ohio St., 33, 124 N. E., 888;
 
 Barnes
 
 v.
 
 Christy,
 
 102 Ohio St., 160, 131 N. E., 352;
 
 Russell, Admr.,
 
 v.
 
 Fourth National Bank,
 
 102 Ohio St., 248, 131 N. E., 726;
 
 Craig
 
 v.
 
 Welply,
 
 104 Ohio St., 312, 136 N. E., 143;
 
 In re Hawke,
 
 107 Ohio St., 341, 140 N. E., 583;
 
 Commonwealth Oil Co.
 
 v.
 
 Turk,
 
 118 Ohio St., 273, 160 N. E., 856;
 
 Werner
 
 v.
 
 Rowley,
 
 129 Ohio St., 15, 193 N. E., 623;
 
 Eastman
 
 v.
 
 State,
 
 131 Ohio St., 1, 1 N. E. (2d), 140.
 

 Prior to January 1, 1913, the jurisdiction of the Circuit Court was fixed by Section 6, Article IV of the Constitution, in the following language:
 

 “The Circuit Court shall have like original jurisdiction with the Supreme Court, and such appellate jurisdiction
 
 as may be provided by law.”
 
 (Italics' ours.)
 

 Prior to January 1, 1913, that jurisdiction was provided by Section 12247, General Code, formerly Section 6709, Revised Statutes, and was as follows: “A
 
 judgment rendered or final order made
 
 by a Court of Common Pleas or by the Superior Court of Cincinnati, or by a judge of either of such courts, may be
 
 *175
 
 reversed, vacated, or modified, by the Circuit Court having jurisdiction in the coúnty wherein the Common Pleas or Superior Court is located, for errors appearing on the record.” (Italics ours.) Section 11582, General Code, then and now in force, defined “judgment” to be “the final determination of the rights of the parties in action”; and Section 12258, General Code, then and thereafter in force to January 1, 1936, defined a “final order” as being: “An order affecting a substantial right in an action, when in effect it determines the action and prevents a judgment, and an order affecting a substantial right made in a special proceeding, or’ upon a summary application in an action after judgment.”
 

 In September, 1912, Section 6, Article IV of the Constitution, was amended (effective January 1,1913), creating the Court of Appeals as successor to the Circuit Court and conferring upon it appellate jurisdiction in the following language:
 

 “The Courts of Appeals shall have * * * appellate jurisdiction in the trial of - chancery cases, and, to review, affirm, modify, or reverse the
 
 judgments
 
 of the Courts of Common Pleas, Superior Courts and other courts of record within the district as may be provided by law.” (Italics ours.)
 

 Soon after the Constitution of 1912 became effective, the courts began to experience difficulty in determining whether the appellate jurisdiction of the Court of Appeals was to be limited to “judgments” in the technical sense as defined in Section 11582, General Code, or comprehended “final orders.”
 

 For instance, it was found that there was no remedy for the excessive allowance of a receiver’s fee by the Common Pleas Court if the right'of review on the part of the Court of Appeals was limited to “judgments.” The Supreme Court having this dilemma before it in 1917, finding that unless there was a right of review in the Court of Appeals there was no forum where the
 
 *176
 
 wrong against a creditor in a too liberal allowance of a receiver’s fee by tbe Common Pleas Court could be remedied and realizing the Legislature was powerless to remedy tbe situation as against a constitutional edict, beld that a final order was still subject to review in tbe Court of Appeals.
 
 Thompson
 
 v.
 
 Denton, supra.
 

 Chief Justice Nichols, speaking for tbe court in tbe last cited case at page 341 said: “We bold that tbe term ‘trial’ as used in tbe Constitution is broad enough to include any judgment, final order or decree, not interlocutory in its nature, affecting tbe substantial rights of a party to a chancery suit.
 

 “In tbe instant case tbe order [allowing receiver’s fees] was made, it is true, after judgment bad been rendered on tbe issues defined by tbe original pleadings in the case, but it was of such character as to substantially affect tbe interests of all parties to tbe record, and especially those creditors, large in number, with claims totaling over a million dollars, who, while not formal parties, were in fact tbe real parties in interest. * * *
 

 “We feel that we are not doing violence to tbe root-meaning of tbe term ‘trial’ by bolding that tbe proceedings so bad would constitute a judicial investigation and determination of an issue that arose during tbe progress ,of tbe administration of tbe trust, ancillary, it is true, to tbe main issues, but important and indeed necessary to finally determine the rights of tbe interested parties.”
 

 In 1922, the Supreme Court, in the case of
 
 Chandler & Taylor Co.
 
 v.
 
 Southern Pacific Co.,
 
 104 Ohio St., 188, 135 N. E., 620, beld that “such interpretation must be given a provision of tbe Constitution as will promote the object of tbe people in adopting it, and narrow and technical definitions of particular words should be avoided. In obedience to this rule tbe term ‘judgments’ appearing in Section 6, Article IV of tbe
 
 *177
 
 Constitution as amended in 1912, is used in its broad and generally accepted meaning and not in that restricted meaning formerly given it by the Legislature in Section 11582, General Code. The term comprehends all decrees and final orders rendered by a court of competent jurisdiction and which determine the rights of parties affected thereby.”
 

 In the case last cited, Judge Jones, speaking for the court, ably and comprehensively reviews the interpretation meant to be given to the term “judgments,” as it appears in the Constitution conferring powers of review upon the Courts of Appeals, and says, at page 192 of the opinion:
 

 “We appreciate the gravity-of the legal problem here involved. But in its solution this court cannot adopt a construction so narrow as to deprive litigants of remedies enjoyed since the adoption of our civil code of procedure. Our bench and bar of this and preceding generation knew that the definitions of ‘judgments’ and ‘final orders’ had been engrafted upon our civil code and that our remedial procedure embraced the review of final orders; and undoubtedly those who framed the Constitution of 1912 did not contemplate a restriction of those civil remedies continuously employed for a period of more than sixty years. While we may not permit the conferment of legislative jurisdiction upon the Court of Appeals under our present Constitution, it is permissible to define the term ‘judgments’ as used in the Constitution. At common law the term was used in a restricted sense. Lexicographers and courts have variously defined it, some giving it a restricted and others a broad and comprehensive meaning. We are satisfied that in order to effectuate the purpose of those who framed this amendment, and in order to promote the object of the people in its adoption, a technical definition should be disregarded and a broad and comprehensive meaning should be adopted. We, therefore, hold that it com
 
 *178
 
 prebends decrees and final orders rendered by a court of competent jurisdiction and which determine the rights of parties affected thereby. Were we to arrive at any other conclusion than herein announced a review of a large number of final orders affecting the substantial rights of litigants would be denied.
 

 “An examination of the reported cases in this state will disclose that there are a large number of final orders which have always been reviewable by our appellate courts, and, if we should hold to the strict definition of the term ‘judgment,’ as contended for, not only would the right of review be denied to litigants in such cases, but the Legislature would be powerless to provide" a remedy by proceedings in error. ’ ’
 

 In addition to the judicial interpretation of the constitutional grant of jurisdiction to the Courts of Appeals, to the effect that the term “judgments” includes “final orders” as defined by statute, we have had in force since the adoption of the constitutional amendments of 1912, up to January 1, 1936, Section 12247, General Code, above quoted, but since January 1, 1936, it has been superseded by Section 12223-27, General Code, as a part of the Appellate Procedure Act. In its present form, it is as follows:
 

 “A judgment rendered or final order made by a Court of Common Pleas, a Probate Court or by any other court of record or by a judge of any of such courts may be reversed, vacated or modified upon an appeal on question of law by the Court of Appeals having jurisdiction in the county wherein the Common Pleas or other court of record is located, for errors appearing on the record.”
 

 Thus both by judicial and legislative construction, it is now well settled that not only “judgments” in the technical sense, but also “final orders” as defined by statute prior to August 23, 1937, are within the constitutional limitation, and therefore reviewable on ap
 
 *179
 
 peal by tbe Court of Appeals. Evidently, with tbe purpose of now enlarging the jurisdiction of tbe Court of Appeals by redefining tbe term “final order,” tbe Legislature, having repealed Section 12258, General Code, amended Section 12223-2, General Code, effective August 23,1937, by adding to and including in tbe definition “an order vacating or setting aside a general verdict of a jury and ordering a new trial.” Tbe section as it now stands is as follows: “An order affecting a substantial right in an action, when in effect it determines tbe action and prevents a judgment, or an order affecting a substantial right made in a special proceeding, or upon a summary application in an action after judgment,
 
 or an order vacating or setting aside a general verdict of a jury and ordering a new trial, is a final order which may be reviewed, affirmed, modified, or reversed,
 
 with or without retrial, as provided in this title.” (Amendment italicized.)
 

 Tbe serious problem now before this court is whether tbe attempt to enlarge tbe scope of tbe definition, given by the statute to tbe term “final order,” so as to include “vacating or setting aside a general verdict of a jury and ordering a new trial,” as.a basis for tbe appellate jurisdiction of tbe Court of Appeals in matters of law, carries it beyond tbe constitutional limitation of “judgments,” as that term is used in tbe Constitution. Tbe answer to this question is determinative of this case because tbe appeal to tbe Court of Appeals is based upon the enlarged jurisdiction supposed to be conferred by tbe amendment of tbe statute above referred to, defining “final order.” It must be conceded that tbe statutory amendment in question, if effective at all, does result in conferring jurisdiction upon Courts of Appeals in addition to that heretofore assumed or exercised.
 

 There are now pending in this court several other cases in each of which the same question is being raised with reference to the constitutionality of tbe
 
 *180
 
 recent amendment of Section 12223-2, General Code, and the court has been favored with most helpful briefs, not only by counsel in this and like cases, but by a number of eminent lawyers who have filed briefs
 
 amici curiae
 
 in one of these cases. The cumulative argument in favor of the constitutionality of the amendment, providing for the setting aside of the verdict and the granting of a new trial as a judgment reviewable by the Court of Appeals, may in brief be summarized as follows: That the Constitution must be construed broadly and liberally to promote the object sought; that every presumption must be indulged in favor of the constitutionality of the statute, especially where the statute is procedural or remedial; that similar statutes are in effect in many other states and have proven useful; that this procedure will shorten litigation and lessen expense; that it is properly within the province of the Legislature to define terms used in the Constitution; that it has been the practice in the Court of Appeals to reverse the order of a trial court denying a new trial when a verdict is not sustained by sufficient evidence; that a final order- is one that divests some right in such manner as to place it beyond the power of the court making, it to place the parties in their original position after the expiration of the term at which it is made; that the order of the court in granting a new trial is a finding that -the party in whose favor the verdict is rendered is not entitled to the judgment thereon which Section 11599, General Code, would otherwise direct the clerk to enter as a matter of course; and that such finding is a final order as to his right to á judgment on the verdict.
 

 Many of these arguments relate to the policy or propriety of the action of the Legislature rather than to the constitutionality of the amendment. Possibly they would have been effective, or at least influential, in the constitutional convention, though the. debates indicate a determined purpose to limit-the jurisdiction
 
 *181
 
 of reviewing courts. In passing, it may be noted that most states do not have similar constitutional limitations. With the propriety of the legislation or the policy of the Legislature in adopting it, this court is not concerned, but will adopt a sympathetic attitude toward the validity of all legislation so far as it can be reconciled with constitutional limitations.
 

 The presumption is always in favor of the validity of an act of the Legislature and it is only when a clear incompatibility between the Constitution and the law appears, that the judicial power will refuse to approve it. On the other hand the Legislature, like other departments of government, exercises only delegated authority, and any act passed by it, not falling within the scope of its authority, is as clearly void as though expressly prohibited. The Constitution is the supreme law; it is the expression of the will of the people, subject to amendment only by the people, and neither the Legislature by legislative enactment, nor the courts by judicial interpretation, can repeal or modify such expression or destroy the plain language and meaning of the Constitution, otherwise there would be no purpose in having a Constitution.
 

 Though this court has interpreted the’term “judgments” so as to include “final orders,” it has limited its application to acts or decrees of the court which give final effect to the central purpose or some independent branch of the litigation, finality being the touchstone in the determination of that quality.
 

 Merely applying a name to an object or thing does not change its character. It is self-evident that the Legislature has no power to increase the scope of the jurisdiction of the Court of Appeals' by enlarging the definition of “final order,” unless such definition or specification of the term can still be construed to be the equivalent of “judgment.”
 

 It is quite apparent that the specifications of what are final orders appearing in the statute before its
 
 *182
 
 amendment are clearly -within the concept of the term “judgment,” but the words of the amendment, which seek to make a judicial act described by them a final order, do not fall in the same category. In the amendment there is a departure from the original concept given to the term final order. In the last analysis then, is the granting of a motion for new trial and setting aside the general verdict of the jury a “judgment”!
 

 It is a matter of importance and significance to observe that prior to 1913, the Constitution, in creating and providing for the Circuit Court, predecessor of the present Court ■ of Appeals, gave the Legislature exclusive authority to determine the scope of the jurisdiction of that court in the words, “such appellate jurisdiction
 
 as may be provided by law.”
 
 (Italics ours.) But when the constitutional amendment of 1912, creating the Court of Appeals, successor to the Circuit Court, was adopted, it took away from the Legislature the right to fix, determine and modify the jurisdiction of the Court of Appeals and placed it securely in the Constitution itself, where it could not be modified except by the act of the people. This amendment specifically limited such jurisdiction to the review of “judgments.” This was not done by error or oversight as the constitutional debates reveal, but deliberately to accelerate litigation by curtailing reviews and to increase the efficiency of the Courts of Appeals by preventing possible overloads which might occur if the jurisdiction could be increased by legislative enactment.
 

 Since the jurisdiction of the Courts of Appeals was fixed by the Constitution of 1912, and since it was not within the power of the Legislature to increase or diminish the scope of such jurisdiction, it was open to the courts rather than to the Legislature to define the limits of that jurisdiction, with the right and indeed the obligation to accord the right of review to every order of the trial courts which could qualify as a
 
 *183
 
 judgment, or by later interpretation as a final order. Yet in a long line of cases before as well as since 1912 and prior to the recent amendment of Section 12223-2, General Code, the courts of this state have uniformly held that the setting aside of a general verdict and the granting of a motion for new trial was not the basis of a review in the Court of Appeals, unless there was an abuse of discretion by the trial court in granting the same.
 
 Conord
 
 v.
 
 Runnels,
 
 23 Ohio St., 601;
 
 Smith
 
 v.
 
 Bailey,
 
 26 Ohio St., 1;
 
 Young
 
 v.
 
 Shallenberger,
 
 53 Ohio St., 291, 41 N. E.,
 
 518; Neuzel v. Village of College Hill,
 
 81 Ohio St., 571, 91 N. E., 1135;
 
 Kroger, Admr.,
 
 v.
 
 Ryan,
 
 83 Ohio St., 299, 94 N. E., 428;
 
 Horseman
 
 v.
 
 Horseman,
 
 85 Ohio St., 437, 98 N. E., 1127;
 
 Continental Trust & Savings Bank Co.
 
 v.
 
 Home Fuel & Supply Co.,
 
 99 Ohio St., 453, 126 N. E., 508;
 
 Wells, Jr., v. Wells,
 
 105 Ohio St., 471, 138 N. E., 71;
 
 Wagner
 
 v.
 
 Long,
 
 133 Ohio St., 41, 11 N. E. (2d), 247;
 
 Ramsey
 
 v.
 
 Oyler et al., d. b. a. Oyler Bros.,
 
 133 Ohio St., 321, 13 N. E. (2d), 577. It is worthy of note that the last four cases above named have been decided since the adoption of the Constitution of 1912.
 

 Since it has been the right and duty of the courts to afford to litigants the fullest jurisdiction of the Court of Appeals, the fact that the courts have universally denied jurisdiction in review, as applied to the granting of a motion for new trial, argues most strongly that such jurisdiction did not and does not exist.
 

 The federal rule, as announced by the Supreme Court of the United States, in a long series of cases, is that the trial court’s discretion in granting or refusing a new trial will not be subject to review unless there is a showing of abuse of discretion. In one of the more recent cases,
 
 Fairmount Glass Works
 
 v.
 
 Cub Fork Coal Co.,
 
 287 U. S., 474, 77 L. Ed., 439, 53 S. Ct., 252, Justice Brandeis, speaking for the court, says:
 

 “The rule that this court will not review the action of a federal trial court in granting or denying a jnoitiop
 
 *184
 
 for a new trial for error of fact has been settled by a long* and unbroken line of decisions; and has been frequently applied where the ground of the motion was that the damages awarded by the jury were excessive or were inadequate. The rule precludes likewise a review of such action by a Circuit Court of Appeals. ’ ’
 

 The very nature of the decision or ruling of the court in granting a motion for new trial indicates that nothing has been attained at this stage of the proceeding to give it such finality as is comprehended by the terms “judgment” or “final order.” There must be a dismissal of the action or some judgment in the broadest sense, determining the ultimate rights of the parties. The general verdict of the jury, as well as the granting of a motion for new trial, are merely interlocutory steps in the progress of the trial toward finality and judgment, but up to that point in the trial there is neither a judgment nor final order.
 

 While not necessary to the decision of this case, it may be a matter of interest to note some of the holdings of this court, in reviewing trial court procedure in civil cases, as to what-are final orders, reviewable in the Court of Appeals. It will be observed that in each of the cases held to be reviewable in the Court of Appeals, either a judgment was awarded or denied to one of the parties by the trial court, constituting a judgment or- final order which furnished the basis for the review. The cases cited may be grouped and described as follows: (1) An order vacating a judgment rendered at a prior term is a final order
 
 (Makranczy
 
 v.
 
 Gelfand, Admr.,
 
 109 Ohio St., 325, 142 N. E., 688) ; while, on the other hand, an order vacating a default judgment upon motion of the defendant, filed at the same term, but more than three days after its rendition, is not a final order, unless the' court abuses its discretion in making it
 
 (Chandler & Taylor Co.
 
 v.
 
 Southern Pacific Co., supra);
 
 (2) Dismissal of an action without prejudice against the protest of the ag
 
 *185
 
 grieved party and the refusal of a trial court to direct a verdict for the defendant determines the action and prevents a judgment in favor of the defendant and is a final order
 
 (Jacob Laub Baking Co.
 
 v.
 
 Middleton,
 
 118 Ohio St., 106, 160 N. E., 629); (3) Denying a motion of a party for final judgment accompanied by the allowance or denial of motion for new trial constitutes a final order, as illustrated in the-following eases: Overruling a motion for judgment on special findings returned by the jury in connection with the general verdict is a final order
 
 (Davis
 
 v.
 
 Turner,
 
 69 Ohio St., 101, 68 N. E., 819); setting aside a verdict for plaintiff, on a motion for new trial and at the same time denying a motion of the defendant for final- judgment is a final order
 
 (Hocking Valley Mining Co.
 
 v.
 
 Hunter,
 
 130 Ohio St., 333, 199 N. E., 184); overruling a motion of defendant for a directed verdict as well as' a motion for judgment notwithstanding the verdict is a final order, although the court granted defendant’s motion for new trial
 
 (Cincinnati Goodwill Industries
 
 v.
 
 Neuerman,
 
 130 Ohio St., 334, 199 N. E., 178); where a motion of defendants for directed verdict was overruled, followed by a verdict for defendants with interrogatories answered consistént with verdict, and while a motion for new trial by plaintiff was pending, defendants again moved for judgment which was denied but new trial granted, there is a final order
 
 (Hubbuch
 
 v.
 
 City of Springfield,
 
 131 Ohio St., 413, 3 N. E. [2d], 359, and
 
 Murphy
 
 v.
 
 Pittsburgh Plate Glass Co.,
 
 132 Ohio St., 68, 4 N. E. [2d], 983); where a motion of defendant for directed verdict was overruled, followed by a verdict for plaintiffs, whereupon defendant moved for a judgment and for a new trial, the court denying the former and granting the latter, there was a final order
 
 (Michigan-Ohio-Indiana Coal Assn.
 
 v.
 
 Nigh, Admr.,
 
 131 Ohio St., 405, 3 N. E. [2d], 355); where there is a verdict for the plaintiff, followed by motion of defendants for judgment notwithstanding the verdict being
 
 *186
 
 overruled, and motion of defendants for new trial on the ground of misconduct of jury being allowed, there was no final order
 
 (Ramsey
 
 v.
 
 Oyler et al., d.b.a. Oyler Bros.,
 
 supra); and, where, at the close of plaintiff’s case, defendant’s motion for directed verdict was sustained and judgment entered for defendant, followed by plaintiff’s motion for new trial being allowed and the judgment being set aside, there was a final order
 
 (Durbin
 
 v.
 
 Humphrey Co.,
 
 133 Ohio St., 367, 14 N. E. [2d], 5); (4) Where there is an abuse of discretion by the trial court in granting motion for new trial, the action of the court is reviewable
 
 (Dean
 
 v.
 
 King, Pennock & King,
 
 22 Ohio St., 118;
 
 Smith
 
 v.
 
 Bailey, supra; Wagner
 
 v.
 
 Long, supra; Pullman Co.
 
 v.
 
 Webster,
 
 51 Ohio App., 131, 200 N. E., 188 [petition in error dismissed, 130 Ohio St., 409, 200 N. E., 194] ); (5) Where there is no judgment there can be no review, as where there was a verdict for defendant, the plaintiff within three days moving for leave to amend petition and for new trial, the former being granted and the latter denied, followed by the setting aside of the verdict and continuance of the cause for further pleadings. In such case there is no final order,
 
 Wagner
 
 v.
 
 Long,
 
 133 Ohio St., 41, 11 N. E. (2d), 247.
 

 In the opinion of the court, the courts of this state have gone to the limit in construing court orders as “final” for the purpose of bringing them within the comprehension of the term “judgment,” and the attempt to make the setting aside of a verdict and the granting of a new trial a final order not only goes beyond any reasonable limits and violates the Constitution, but, if approved, would by inference withdraw all limitation against future enlargement of the jurisdiction of the Court of Appeals by legislative enactment. This would result in confusion and make a mockery out of the constitutional limitation of the jurisdiction of that court. If a change in the jurisdiction of the court is desirable, it should be accomplished
 
 *187
 
 by constitutional amendment. The people could then, if they see fit, undo what they deliberately and intentionally did in 1912.
 

 The motion to dismiss the appeal in the Court of Appeals was properly allowed. The judgment of that court is affirmed and the case is remanded to the Common Pleas Court for further proceedings according to law.
 

 Judgment affirmed.
 

 Weygandt, C. J., Day, Zimmerman, Williams, Myers and Matthias, JJ., concur.